IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| JORGE AYALA, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | C.A. NO. C-07-330 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| Respondent. | § | |

**MEMORANDUM AND RECOMMENDATION
TO GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT**

Petitioner is an inmate in the Texas Department of Criminal Justice,

Correctional Institutions Division, and is currently incarcerated at the George Beto

Unit in Tennessee Colony, Texas.  Proceeding pro se, petitioner filed this habeas

corpus petition pursuant to 28 U.S.C. § 2254 on August 3, 2007.  (D.E. 1).

Respondent moves for summary judgment on the grounds that petitioner's claims

are without merit.  (D.E. 9).  For the reasons stated herein, it is respectfully

recommended that respondent's motion for summary judgment be granted.

**I.  JURISDICTION**

The Court has jurisdiction over the subject matter and the parties pursuant to

28 U.S.C. § 2254, which provides that jurisdiction is proper where the inmate is

confined, or where the conviction was obtained.  Wadsworth v. Johnson, 235 F.3d

959, 961-62 (5th Cir. 2000).  Petitioner was convicted by the 117th Judicial

District Court of Nueces County, Texas, and therefore, jurisdiction is proper in this Court.  28 U.S.C. § 124(b)(6).

## II.  BACKGROUND

**A.    Procedural Background.**

On June 16, 2004, a jury convicted petitioner of burglary of a habitation with intent to commit aggravated robbery in cause No. 04-CR-0402-B.  On August 18, 2005, the Thirteenth Court of Appeals affirmed the conviction.  Ayala v. State, No. 13-04-00380-CR, 2005 WL 1981512 (Tex. App. Aug. 12, 2005) (unpublished).  On February 21, 2006, the Texas Court of Criminal Appeals denied petitioner's application for discretionary review.  Ayala v. State, PDR No. 1428-05.  On July 11, 2007, his application for state habeas was denied without written order.  Ex parte Ayala, No. WR-65,461-02.  On August 3, 2007, petitioner filed this application for a writ of habeas corpus.  (D.E. 1).  On October 8, 2007, respondent moved for summary judgment.  (D.E. 9).

**B.    Factual Background.**

On the morning of February 2, 2004, three masked men carrying guns burglarized the home of Bill and Arlene Ward.  (D.E. 9, Ex. B, at 1).  They tied the Wards up with shoelaces and held them at gunpoint for approximately thirty

minutes.  Trial Transcript, Vol. 5, at 46-56.[1]  The burglars took some valuables

from the house and left in the Wards' cars, a Lincoln Navigator and a Mercedes.

(D.E. 9, Ex. B, at 1)

Police officers found the Lincoln Navigator parked in front of a house in

Corpus Christi.  Id. at 2.  An officer followed the car after an individual left the

house and drove away in it.  Id.  The driver, Anthony Romero, was taken into

custody.  Id.  Police then searched the house with the consent of the occupant, Mr.

Romero's mother.  Id.  They found several weapons, the keys to both vehicles, and

personal items belonging to the Wards.  Id.  They then obtained a statement from

Tomas Sifuentes, who was present during the search, implicating himself, Mr.

Romero, and petitioner in the robbery.  Id.  Based on that statement, police

prepared two photographic lineups containing photographs of petitioner and Mr.

Romero.  Id.  Ms. Ward identified petitioner, but not Mr. Romero, as one of the

burglars.  Id.

Petitioner was indicted for first degree burglary on February 19, 2004.

Appellate Record at 4-5.[2]  Mr. Romero was sentenced to twenty-five years in

prison after pleading guilty to burglary in the case.  (D.E. 9, at 15).  Petitioner

---

[1] "Trial Transcript" is hereinafter abbreviated as "Tr."

[2] "Appellate Record" is hereinafter abbreviated as "App. Rec."

turned down a plea offer for a 35-year prison term, electing to be tried by a jury. Tr., Vol. 2, at 7-8; State Habeas Application, at 32.[3]  He also elected to be sentenced by the court if convicted.  App. Rec. at 46.  Petitioner's trial began on June 15, 2004.  Tr., Vol. 4, at 3.

At trial, Mr. Sifuentes testified that, on the night of the burglary, he rode with petitioner (who was dating his sister) and Mr. Romero to an unfamiliar location to "talk to some guy."  Id. at 38-41.  After they exited the vehicle, Mr. Sifuentes moved to the driver's seat, popped the trunk for the other two, and waited between fifteen and thirty minutes for them to return after they disappeared behind a large bush.  Id. at 41-42.  Mr. Sifuentes then saw a garage light come on.  Id. at 45.  Inferring that the others were ready to leave, he drove back to his home without seeing either emerge.  Id. at 45-46.  They returned shortly after Mr. Sifuentes, whereupon they unloaded some speakers and clothes from a Lincoln Navigator and a Mercedes.  Id. at 46-48.

Mr. Ward was not able to identify petitioner; however, he did testify that he had seen petitioner wearing a jacket stolen during the robbery.[4]  Id. at 141-45.

---

[3] "State Habeas Application" is hereinafter abbreviated as "SHA."

[4] Petitioner wore the jacket during a trial for sexual assault in March 2004.  The Wards were apparently in attendance.  See Ex Parte Ayala, WR-65,461-01 (Supp. Record, letter from Judge Koetter enclosing affidavit from attorney Stanley Turpen).

Mrs. Ward identified petitioner as the burglar who stayed with them while the others ransacked the house.  Tr, Vol. 5, at 69-70.  According to Mrs. Ward, petitioner's bony features were clearly visible through the mask.  Id. at 70.  She recognized petitioner's voice as well.  Id. at 74.  She also identified the suit stolen from her husband.

On June 16, 2004, the jury found petitioner guilty as charged, and also made a specific finding that petitioner had used a firearm during the commission of the offense.  Id. at 137.  In Texas, burglary is a first degree felony when 1) the structure is a habitation and 2) the perpetrator commits, attempts, or attempts to commit a felony other than theft.  Tex. Pen. Code. Ann. § 30.02.  In this case, the underlying felony was aggravated robbery.  App. Rec. at 4.  In Texas, a first degree felony is punishable by a term of five to ninety-nine years in prison, or life in prison.  Tex. Pen. Code. Ann. § 12.32.

On June 17, 2004, the punishment phase was held.  Tr., Vol. 6, p. 1.  The court considered petitioner's repeated referrals for delinquency for assault, burglary (twice), unauthorized use of a motor vehicle (twice), and arson.  Id., Vol. 7, Ex. 53.  The court also considered petitioner's March 24, 2004 conviction for a sexual assault that occurred on August 25, 2002.  Id., Vol. 7, Ex. 54.  The prosecution presented evidence that, on January 13, 2004, petitioner carried a

handgun into Dillard's at Padre Staples Mall, while shoplifting.  Id., Vol. 6, at 20-24.  Petitioner's accomplice was also armed, with a handgun whose serial number matched that of a gun stolen during a December 29, 2003 robbery.  Id. at 55, 68-69.  After petitioner was taken into custody, the arresting officer found identification cards belonging to one of the victims of that robbery in a patrol car where petitioner had been sitting.  Id. at 59-61, 70, 85.  A corrections officer also testified that he found an improvised shank during a pre-appearance search of petitioner immediately before he was transported that morning.  Id. at 28-29.  The state asked for a ninety-nine year sentence, to be served consecutively with the twenty years imposed pursuant to his conviction for sexual assault.  Id. at 112.

Petitioner's counsel, Stanley Turpen, presented no mitigating evidence.  Id. at 106.  Instead, he identified weaknesses in the prosecution's evidence, asked the court to consider petitioner's troubled background, and requested a sentence of between twenty-five and thirty-five years in prison.  Id. at 112-19.  Against counsel's advice, petitioner refused to testify on his own behalf.  SHA at 32.

The judge found that petitioner had in fact shoplifted and carried a weapon into Dillard's, participated in the December 29, 2003 robbery, and attempted to bring a weapon into the courtroom.  Id. at 124.  Based on the above, and taking into account all other relevant factors, she imposed a sixty-year sentence.  Id. at

6

124-26.  Petitioner's sentence is to be served consecutive to the twenty-year

sentence for sexual assault.  <u>Id.</u> at 126.

### III.  PETITIONER'S ALLEGATIONS

Petitioner claims that trial counsel was constitutionally ineffective for three

reasons:

1) Trial counsel failed to investigate and call witnesses that would have

testified on petitioner's behalf during the punishment phase;

2) Trial counsel failed to investigate petitioner's co-defendant, who would

have testified that he was the principal perpetrator, not petitioner; and

3) Trial counsel failed to call a forensic psychologist to testify that

eyewitness testimony is unreliable.  (D.E. 1, at 7).

### IV.  EXHAUSTION OF STATE REMEDIES

A federal writ of habeas corpus from an inmate in state custody shall not be

granted unless: 1) the inmate has exhausted his legal remedies in the state courts;

2) state corrective processes are absent; or 3) circumstances render such processes

insufficient to protect the individual's rights.  28 U.S.C. § 2254(b)(1).  The

exhaustion requirement is satisfied when the substance of each claim has been

fairly presented to the highest court of the state.  <u>O'Sullivan v. Boerckel</u>, 526 U.S.

838, 842 (1999); <u>Fisher v. Texas</u>, 169 F.3d 295, 302 (5th Cir. 1999) (citation

7

omitted).  In Texas, exhaustion may take one of two paths: (1) the petitioner may file a direct appeal followed, if necessary, by a petition for discretionary review in the Texas Court of Criminal Appeals, or (2) the petitioner may file a petition for state writ of habeas corpus.  <u>Myers v. Collins</u>, 919 F.2d 1074, 1076 (5th Cir. 1990) (citing <u>Richardson v. Procunier,</u> 762 F.2d 429, 431-32 (5th Cir. 1985)).

Petitioner's claims are exhausted because they are identical to those brought in his application for state habeas relief.  SHA at 7-8.  Indeed, respondent concedes that petitioner exhausted his state court remedies before filing this petition.  (D.E. 9, at 3).

## V.  STANDARD OF REVIEW

**A.**  **Federal Habeas Corpus Standard of Review Pursuant to the AEDPA.**

A federal writ of habeas corpus is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States. <u>Boyd v. Scott</u>, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam) (citation omitted). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), courts may not grant habeas relief unless a petitioner demonstrates that the state court's decision was "contrary to, or involved an unreasonable application, of clearly established federal law" or was "based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d).  Thus, "federal habeas relief is

only merited where the state court decision is both incorrect <u>and</u> objectively

unreasonable." <u>Morrow v. Dretke</u>, 367 F.3d 309, 313 (5th Cir. 2004) (emphasis in

original) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 411 (2000)); <u>see</u> <u>also</u> <u>Riddle v.</u>

<u>Cockrell</u>, 288 F.3d 713, 716 (5th Cir. 2002).  The AEDPA's provisions "ensure

that state-court convictions are given effect to the extent possible under law." <u>Bell</u>

<u>v. Cone</u>, 535 U.S. 685, 693 (2002) (citation omitted).

The Supreme Court has concluded that the "contrary to" and "unreasonable

application" clauses of 28 U.S.C. § 2254(d)(1) have independent meanings.  <u>Id.</u> at

694 (citing <u>Williams</u>, 529 U.S. at 404-05).  The Court explained:

> A federal court may issue the writ under the "contrary to"
> clause if the state court applies a rule different from the
> governing law set forth in our cases, or if it decides a
> case differently than we have done on a set of materially
> indistinguishable facts.  The court may grant relief under
> the "unreasonable application" clause if the state court
> correctly identifies the governing legal principles but
> unreasonably applies it to the facts of the particular case.
> The focus of the latter inquiry is on whether the state
> court's application of clearly established federal law is
> objectively unreasonable, and we stressed in *Williams*
> that an unreasonable application is different from an
> incorrect one.

<u>Id.</u> (citations omitted).

The Fifth Circuit has explained that the "contrary to" clause applies where a

"state court arrives at a conclusion opposite to that reached by [the Supreme Court]

9

on a question of law or if the state court decides a case differently than [the Supreme] Court on a set of materially indistinguishable facts." Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (citation omitted).  The Fifth Circuit has further determined that "§ 2254(d) permits a federal habeas court 'to review only a state court's 'decision,' and not the written order explaining that decision.'" St. Aubin v. Quarterman, 470 F.3d 1096, 1100 (5th Cir. 2006) (citing Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam)); accord Anderson v. Johnson, 338 F.3d 382, 390 (5th Cir. 2003).  The state court's "ultimate decision" is to be tested for reasonableness, "not every jot of its reasoning." Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001).  Furthermore, a state court need not cite, or "even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

Absent a direct conflict with Supreme Court authority, habeas relief is available if a state court decision is objectively unreasonable. Montoya v. Johnson, 226 F.3d 399, 404 (5th Cir. 2000).  A federal district court "must reverse when [it] conclude[s] that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" Gardner v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001).  As with the "contrary to" test, the

focus of the "unreasonable application" test is "on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of evidence." Neal, 286 F.3d at 246.

Finally, "[t]he AEDPA requires that [the Court] presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'" Morrow, 367 F.3d at 315 (quoting 28 U.S.C. § 2254(e)(1)).  The presumption of correctness is also accorded to adjudications made during state post-conviction proceedings. Id.  The burden to rebut the presumption of correctness remains on petitioner even if the state "hearing was a 'paper' hearing and may not have been full or fair." Id. (citing Valdez v. Cockrell, 274 F.3d 941, 950-51 (5th Cir. 2001)).  In some circumstances, findings of fact may be implied from conclusions of law. See Valdez, 274 F.3d at 948 n.11 ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.") (citations omitted); Goodwin v. Johnson, 132 F.3d 162, 183-84 (5th Cir. 1997).

**B.    Motion for Summary Judgment Standard of Review.**

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas corpus cases. Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000).  Summary

judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Courts must consider the record as a whole, considering all pleadings, depositions, affidavits, and admissions on file in the light most favorable to the non-movant.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991).  The non-movant cannot merely rest on the allegations of the pleadings, but must establish that material controverted facts preclude summary judgment.  Fed. R. Civ. P. 56(e);

12

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  Summary

judgment is proper if the non-movant fails to make a showing sufficient to

establish the existence of an element essential to his case on which he bears the

burden of proof.  Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v.

Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

## VI.  DISCUSSION

### A.    AEDPA's Deference Applies to the State Court's Denial of Petitioner's Claims.

AEDPA's deferential standard of review applies only to claims adjudicated

on the merits.  28 U.S.C. § 2254(d).  Petitioner's claims were all raised in his state

habeas corpus application.  (D.E. 1, at 7); SHA at 7-8.  Based on the trial court's

findings,[5] the Texas Court of Criminal Appeals denied his state habeas application

without written order.  SHA at cover.  This denial of petitioner's application is an

adjudication on the merits even though the state court has not explained its

reasoning.  See Jackson v. Johnson, 150 F.3d 520, 524 (5th Cir. 1998) ("the denial

of relief serves, under Texas law, to dispose of the merits of the claim") (citing Ex

parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding that "denial"

signifies an adjudication on the merits, while "dismissal" means the court has

---

[5] The trial court's one-paragraph order finds that "there is no necessity for an evidentiary hearing or expansion of the record" and that "the assertions contained in the State's Answer are correct."  Id. at 35.

declined to consider the claim); see also Neal, 286 F.3d at 235 (in the context of

federal habeas proceedings, "adjudication 'on the merits' is a term of art that refers

to whether a court's disposition of the case was substantive") (citation omitted).

Thus, petitioner is not entitled to federal habeas relief unless he can demonstrate

that the state court's decision was "contrary to, or involved an unreasonable

application, of clearly established federal law" or was "based on an unreasonable

determination of the facts."  28 U.S.C. § 2254(d).

**B.**    **Standard of Review Pursuant to Strickland v. Washington.**

The Fifth Circuit has determined that "under AEDPA a state court decision

rejecting a *Strickland* claim must be accepted unless it was an unreasonable

application of its teaching."  Granados v. Quarterman, 455 F.3d 529, 534 (5th Cir.),

cert. denied, 127 S. Ct. 732 (2006).  To prevail on a claim of ineffective assistance

of counsel, a state prisoner seeking federal habeas corpus relief bears the burden of

showing that: (1) counsel's performance was deficient, and (2) that the deficient

performance resulted in actual prejudice.  Strickland v. Washington, 466 U.S. 668,

687 (1984).  In order to show counsel's performance was deficient, petitioner must

show that "counsel made errors so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  He must

demonstrate that counsel's representation fell below an objective standard of

14

reasonableness as measured by prevailing professional standards.  See Little v.

Johnson, 162 F.3d 855, 860 (5th Cir. 1998).

Counsel's challenged conduct should be evaluated from the perspective of

counsel at the time the conduct occurred.  Strickland, 466 U.S. at 690.  Due to the

difficulties inherent in engaging in this analysis without being tainted by "the

distorting effects of hindsight," a court's review should be highly deferential to

counsel.  Id. at 689.  The reviewing court must give great deference to counsel's

performance, strongly presuming that counsel has exercised reasonable

professional judgment.  Id. at 690; see also Romero v. Lynaugh, 884 F.2d 871, 876

(5th Cir. 1989) (there is a strong presumption that counsel's conduct falls within a

wide range of reasonable professional assistance).

The Fifth Circuit has explained that due to "the almost infinite variety of

possible trial techniques and tactics available to counsel, this Circuit is careful not

to second guess legitimate strategic choices."  Yohey v. Collins, 985 F.2d 222, 228

(5th Cir. 1993).  In addition, "[a] conscious and informed decision on trial tactics

and strategy cannot be the basis for constitutionally ineffective assistance of

counsel unless it is so ill chosen that it permeates the entire trial with obvious

unfairness."  Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (citations

omitted); accord United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002)

15

(citations omitted).  However, a reviewing court need not consider the deficiency

prong if the court concludes that petitioner has failed to show actual prejudice.

Strickland, 466 U.S. at 697; Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995).

     Under the second prong of the Strickland two-part test, petitioner may not

simply allege, but must affirmatively prove actual prejudice, resulting from the

ineffective assistance of counsel.  Strickland, 466 U.S. at 693.  Thus, he must

affirmatively show that his counsel's actions deprived him of a fair trial.  See

Czere v. Butler, 833 F.2d 59, 63-64 (5th Cir. 1987).  Prejudice results when "there

is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceedings would have been different."  Strickland, 466 U.S. at 694; see

also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (habeas petitioner must show

that the trial result was unreliable, or the proceeding was fundamentally unfair due

to counsel's deficient performance).

     Petitioner has the burden of proof under the Strickland test.  See Carter v.

Johnson, 131 F.3d 452, 463 (5th Cir. 1997) (holding burden of proof is on

petitioner in federal habeas proceeding).  He must establish "actual prejudice as a

result of his counsel's ineffectiveness."  Moody v. Johnson, 139 F.3d 477, 482 (5th

Cir. 1998) (citations omitted).  In addition, conclusory allegations of ineffective

assistance of counsel do not give rise to a constitutional claim for federal habeas

16

relief.  Collier v. Cockrell, 300 F.3d 577, 587 (5th Cir. 2002) (citations omitted); see also Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) ("Because [petitioner] failed to set forth the nature of *any* of the errors trial counsel purportedly failed to preserve and did not assert any resulting prejudice, the district court properly determined that these three claims of ineffective assistance were conclusory.").  The Fifth Circuit has further held that "'[i]n the absence of a specific showing of how these alleged errors and omissions were constitutionally deficient, and how they prejudiced [petitioner], ... we [can find] no merit to these claims."  Miller, 200 F.3d at 282 (quoting Barnard v. Collins, 958 F.2d 634, 642 (5th Cir. 1992)).

Finally, in order to prove that he is entitled to federal habeas relief due to ineffective assistance of counsel, petitioner must overcome the presumption of correctness to which the state court's findings are entitled.  See Schaetzle v. Cockrell, 343 F.3d 440, 444 (5th Cir. 2003) ("It bears repeating that the test for federal habeas purposes is *not* whether [petitioner made a showing under *Strickland*, but] ... whether the state court's decision-that [the petitioner] did *not* make the *Strickland*-showing-was contrary to, or an unreasonable application of, the standards, provided by clearly established federal law (*Strickland*), for succeeding on his IAC claim.").

17

In the context of state prison sentences, prejudice occurs when there is a reasonable probability that the sentence would have been "<u>significantly</u> less harsh" but for trial counsel's errors. <u>Ward v. Dretke</u>, 420 F.3d 479, 498 (5th Cir. 2005) (per curiam) (emphasis added) (quoting <u>Spriggs v. Collins</u>, 993 F.2d 85, 88 (5th Cir. 1993) (en banc)).[6]  This rule is necessary "[i]n order to avoid turning <u>Strickland</u> into an automatic rule of reversal in the non-capital sentencing context." <u>Spriggs</u>, 993 F.2d at 88.  Significance is determined with reference to "'such factors as the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the range of potential sentences, and any relevant mitigating or aggravating circumstances.'" <u>Ward</u>, 420 F.3d at 498 (citing <u>United States v. Segler</u>, 37 F.3d 1131, 1136 (5th Cir. 1994)).

The Fifth Circuit has explained that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial and because allegations of what a witness would have testified are largely speculative.'" <u>Coble v. Quarterman</u>, 496 F.3d 430, 436 (5th Cir. 2007) (citations omitted).  For that reason, the Fifth Circuit has cautioned that courts should

---

[6]  The <u>Spriggs</u> "significantly less harsh" test for prejudice does not apply to state sentences when counsel's deficient performance results in a specific, demonstrable sentence enhancement.  993 F.2d at 88 n.4.  Accordingly, it is respectfully recommended that the exception does not apply in this case.

proceed carefully when the only evidence of a missing witness's testimony comes from the defendant.  Harrison v. Quarterman, 496 F.3d 419, 428 (5th Cir. 2007). "'Ordinarily, a defendant's failure to present some evidence *from the uncalled witness* regarding that witness's potential testimony and willingness to testify would be fatal to an ineffective assistance of counsel claim.'"  Id. (emphasis in original) (citing Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001)).

**C.    The Texas Court of Criminal Appeals' Denial of Petitioner's Claims was not Contrary to, or an Unreasonable Application of, Clearly Established Federal Law.**

**1.    Petitioner's Claims that His Counsel Failed to Investigate Family Members.**

Petitioner alleges that trial counsel "performed no investigation into any possible mitigating factors and failed to contact even a single family member for mitigation witnesses in the punishment hearing, despite the availability of such witnesses."  (D.E. 1, at 7).  He claims that there were "four people who would have testified on Ayala's behalf about his good character and reputation."  Id.  Petitioner provides no further detail; however, in his state petition, he refers to his mother and three sisters.  SHA at 17.

Petitioner's claim must fail because he does not show that the state court's decision was incorrect under federal law.  Petitioner has provided no evidence in support of his claim, either in the instant petition or in his state habeas proceedings.

19

The state, on the other hand, has presented an affidavit from his counsel explaining

that the decision not to call petitioner's family to the stand was the product of a

researched, informed trial strategy to which petitioner agreed.  Mr. Turpen swore

that

> Counsel did conduct pretrial investigations into this case.
> All discovery was reviewed with Mr. Ayala along with his
> criminal history.  Counsel had the defendants [sic] mom
> and sisters present for possible use as witnesses just like
> we did in the four previous trials in San Patricio and
> Refugio counties.  After talking with the mom and sisters
> counsel and Mr. Ayala determined that their testimony at
> the sentencing phase was not going to help Mr. Ayala.

SHA at 32.

Even if petitioner's claim was supported by the record, he would not be able

to show a reasonable probability that counsel's deficiency resulted in a

significantly harsher sentence.  Facing from five years to life in prison, petitioner

was sentenced to sixty years.  Tr., Vol. 6, at 126.  The trial judge's sentence took

many aggravating circumstances into account: petitioner's record of delinquency;

the armed shoplifting incident; his involvement in the December 29, 2003 armed

robbery of a fireworks stand; his prior conviction for sexual assault; and his

attempt to bring a weapon into the courtroom for the sentencing hearing as well.

Id. at 124-25.  The judge explained that the "major reason" for her sentence was to

incapacitate petitioner "to protect society," not to deter him from committing

crimes in the future.  Id. at 123-24.  She did not intend to rehabilitate him, because

his actions demonstrated "a total lack of respect for our society that's built on a

rule of law" that "[spoke] volumes for [his] attitude and the possibility that [he]

had learned from [his] mistakes."  Id. at 125-26.

Given petitioner's extensive history of criminal behavior, a reasonable jurist

could conclude that petitioner very probably would have received the same

sentence even if mitigating evidence had been presented.  See, e.g., Ward, 420 F.3d

at 499-500 (where petitioner facing life was sentenced to sixty years, state court's

denial of Strickland claim for lack of prejudice was not unreasonable pursuant to

AEDPA even though attorney's error led to introduction of inadmissible,

prejudicial evidence at sentencing).  Accordingly, it is respectfully recommended

that petitioner's claim be denied.

### 2.    Petitioner's Claim that His Counsel did not Investigate his Co-Defendant.

Petitioner next alleges that "trial counsel failed to investigate and interview

Ayala's co-defendant, Anthony Romero, and discover that Romero was the

principal perpetrator in the burglary of the Ward residence; such failure allowed

actions that were committed by Romero to be attributed to Ayala.  Due to Turpen's

failure to investigate, Romero was sentenced to 25 years in prison and Ayala was

sentenced to 60 years in prison."  (D.E. 1, at 7).  Petitioner reasons that "the

sentences should have been reversed, at best...."  Id.

The state court correctly denied this claim.  Petitioner failed to produce any evidence suggesting that Mr. Romero would have testified at his trial, or that such testimony would have been favorable to him.  The state, however, has produced his counsel's affidavit indicating that Mr. Romero was not called because of his prior conviction for burglary, as part of a reasoned trial strategy:

> In reviewing Mr. Ayala's case with him it was part of our trial strategy to not call Mr. Anthony Romero to testify because Mr. Romero had a prior felony conviction for Burglary of a Habitation.  Mr. Ayala never relayed to counsel in pretrial preparation, trial sentencing and appeal that Anthony Romero was in fact the principal perpetrator in the burglary of the Ward residence.  The State did argue and included in the jury charge the rule of Parties which would have negated Mr. Ayala's "new theory" of events in this case.

SHA at 33 (emphasis in original).

Even if petitioner's allegations were supported, relief would not be warranted.  Mr. Romero's sentence was imposed pursuant to a plea agreement.  Petitioner chose to risk a trial rather than accept counsel's advice to accept a "legitimate, fair" offer.  Tr., Vol. 2, at 7-8.  Furthermore, although Mrs. Ward testified that petitioner threatened to kill her unless she stopped staring at him and also asked if she was a racist, Tr., Vol. 5, at 66, the record does not indicate that petitioner's conduct during the burglary was a substantial factor in the court's

sentencing decision.  The sentencing disparity reflects the defendants' very different circumstances; it does not help petitioner demonstrate a reasonable probability that he would have received a substantially less harsh sentence if Mr. Romero had testified and been found credible.  Accordingly, it is respectfully recommended that petitioner's claim be denied because the state court's decision was correct.

### 3.    Petitioner's Claim that Counsel was Ineffective for Failing to Call a Forensic Psychologist.

Petitioner's final claim is that trial counsel was constitutionally ineffective because he "failed to call a forensic psychologist to testify about the unreliability of eyewitness testimony."  (D.E. 1, at 7).  This claim, too, fails because petitioner has given the Court no evidence to rebut trial counsel's sworn statement that trial counsel made an informed decision not to present an expert:

> As part of counsels [sic] trial strategy, counsel argued in Voir Dire and in closing argument the basic idea that people can see the same event and yet have a completely different account of what they have seen and heard.  Also that people are not perfect in their recollections of past events.  Counsel believes there was not a necessity to call in an expert to get the basic principles across to the jury. Counsel argues the principle in every trial that he tries. Since the overwhelming majority of people understand this basic human principle, counsel believes it would have been a strategic mistake to call in an expert to relay this principle to a jury and then take the risk that the jury might believe that your [sic] trying to pull a fast one on

23

   them.  It could work against you in trial.

> The fact is that Mr. and Mrs. Ward testified that there
> were <u>three</u> short hispanic men with weapons and had ski
> masks over their heads.  Yet Mrs. Ward testified that she
> <u>saw</u> Mr. Ayala's eyes, nose, and bony features.  Mrs.
> Ward was able to id Mr. Ayala in a photo lineup very
> quickly without hesitation.  Mrs. Ward testified that she
> was not able to id the co-d Anthony Romero because of
> his hairline.  The jury believed Mr. & Mrs. Ward's direct
> testimony and weighed their credibility in their favor.
> Their testimony according to the jury after the trial was
> very believable and credible.

SHA at 33-34 (emphases in original).

     The Fifth Circuit has explained that a lawyer may legitimately choose to

present a mistaken identity defense without calling an eyewitness identification

expert.  <u>See</u> <u>Ford v. Dretke</u>, 135 Fed. Appx. 769, 774-75 (5th Cir. June 22, 2005)

(unpublished) (counsel's decision to abandon motion to appoint eyewitness

identification expert was not objectively unreasonable in the absence of controlling

authority requiring such appointment); <u>see</u> <u>also</u> <u>United States v. Labansat</u>, 94 F.3d

527, 530 (9th Cir. 1996) (reasonable defense likely would not have hired an

eyewitness identification expert).  Indeed, most courts strongly disfavor expert

testimony regarding eyewitness identification.  <u>See</u>, <u>e.g.</u>, <u>United States v. Hall</u>, 165

F.3d 1095, 1105 (7th Cir. 1999); <u>Labansat</u>, 94 F.3d at 530 (citation omitted).  It is

therefore respectfully recommended that counsel's performance was not deficient

for failing to call a forensic expert.

Additionally, the claim should be denied because petitioner has not established prejudice. Failure to call an eyewitness identification expert does not automatically prejudice a defendant; counsel can effectively present the mistaken identity defense in other ways. See Ford v. Cockrell, 315 F. Supp.2d 831, 853 (W.D. Tex. 2004) (no prejudice where counsel "persistently tried to cast the reliability of the identifications in doubt"), aff'd, 135 Fed. Appx. 769; see also Labansat, 94 F.3d at 530 ("Any weaknesses in eyewitness identification testimony can ordinarily be revealed by counsel's careful cross-examination of the eyewitnesses.") (citation omitted); United States v. Harris, 995 F.2d 532, 535 (4th Cir. 1993) (noting that "jurors using common sense and their faculties of observation can judge the credibility of an eyewitness identification, especially since deficiencies or inconsistencies in an eyewitness's testimony can be brought out with skillful cross-examination") (citation omitted).

Petitioner's counsel cross-examined Mrs. Ward on her identification, pointing out that she: 1) mis-characterized petitioner's height; 2) volunteered that she had poor vision; 3) drank alcohol and took migraine pills the night before the burglary; 4) had no special expertise in voice analysis; and 5) that the burglars all wore ski masks during the burglary. Tr., Vol. 5, at 77-78, 82-88, 92. He reiterated

these facts during the closing argument.  Id. at 116, 120-21, 126-27.  The facts supporting a mistaken identity defense were thus established at trial.  Furthermore, if Mrs. Ward's testimony had been discredited, the jury could still have convicted petitioner based on the testimony of Tomas Sifuentes and Mr. Ward, see id. at 128, 131-34 (summarizing evidence linking defendant to burglary) or as an accomplice. Id. at 103 (jury charge on law of parties).  Therefore, it is respectfully recommended that petitioner's claim of ineffective assistance of counsel for failure to call a forensic expert be denied.

## VII.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Fifth Circuit from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may sua sponte rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on

would be repetitious.").

A certificate of appealability "may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  This standard requires a § 2254 petitioner to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further.  United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (citing Slack, 529 U.S. at 483).

As to claims district courts reject solely on procedural grounds, a petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  Slack, 529 U.S. at 484 (emphasis added).

Here, it is respectfully recommended that reasonable jurists could not debate

27

the denial of petitioner's § 2254 petition, nor find that the issues presented are adequately meritorious to deserve encouragement to proceed.  Accordingly, it is respectfully recommended that the Court find that petitioner is not entitled to a certificate of appealability as to his claims.

## VIII.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that respondent's motion for summary judgment, (D.E. 9), be granted.  It is further respectfully recommended that a certificate of appealability be denied.

Respectfully submitted this 8th day of December 2007.


_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO THE PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).